UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 9:17-CV-80574-ROSENBERG/HOPKINS

FRANK CALMES,

    Plaintiff,

v.

BW-PC, LLC, a Florida limited liability
Company, et al.,

    Defendants.
_____/

## ORDER DISMISSING CASE

**THIS CAUSE** is before the Court on Defendants' motions to dismiss at docket entries 64 and 65. Both motions have been fully briefed. For the reasons set forth below, Plaintiff's Second Amended Complaint is dismissed as the Court concludes that it lacks subject matter jurisdiction over Plaintiff's claims.

### I.     FACTUAL ALLEGATIONS

The Defendants in this case are alleged to have exercised control over a country club: Boca West Country Club, Inc. ("Boca West"). DE 62 at 1-3. Plaintiff, a Boca West property owner, brought this case alleging, *inter alia*, that Defendants mismanaged Boca West. *Id.* Defendants are alleged to have mismanaged the Boca West community by raising fees and dues in contravention of the community by-laws, by improperly selling certain vacant land, and by improperly collecting locker rental fees. Plaintiff has brought this case on behalf of a proposed class of Boca West property owners.

### II.     PROCEDURAL HISTORY

Plaintiff filed this case on May 5, 2017. After the Court entered an order setting trial, Plaintiff soon thereafter amended his complaint as a matter of right on May 25, 2017.

Defendants filed a motion to dismiss on June 22, 2017. On October 16, 2017, the Court granted Defendants' motion to dismiss, placed Plaintiff on notice of the Court's concerns about whether the Court had subject matter jurisdiction over Plaintiff's claims, and permitted Plaintiff to file another amended complaint. Plaintiff then filed his third complaint, a second amended complaint, on November 2, 2017. In response, Defendants filed two motions to dismiss. Both motions are now before the Court.

### III.  THE COURT'S SUBJECT MATTER JURISDICTION OVER THE CLASS

When a plaintiff files suit in federal court, he must allege facts that, if true, show federal subject matter jurisdiction over his case exists. *Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1268 (11th Cir. 2013) (citing *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Because the parties are not diverse, Plaintiff asserts that this Court has subject matter jurisdiction over his case under the Class Action Fairness Act ("CAFA"). CAFA provides that federal district courts have original jurisdiction over class actions where (1) the amount in controversy exceeds $5,000,000 and (2) "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2). CAFA did not alter the traditional rule that the party seeking access to the federal court bears the burden of persuasion regarding jurisdictional issues. *See Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328 (11th Cir. 2006). Further, in assessing if the party seeking access to the federal court has met its burden, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case[.] . . . [N]o presumptive truthfulness attaches to plaintiff's allegations." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

In the Court's prior order dismissing Plaintiff's First Amended Complaint, the Court put Plaintiff on notice of its concerns about its subject matter jurisdiction over this case. Specifically, the Court focused Plaintiff's attention on the $5,000,000 amount-in-controversy requirement under CAFA:

> Plaintiff does not allege sufficient facts for this Court to conclude that the amount in controversy exceeds $5,000,000. Plaintiff makes two allegations regarding the amount in controversy. First, he alleges that "Defendants' mismanaging the sale of club property led to a loss of over $17,000,000. . . . Because the Akoya units [at Boca West] were not timely built, the Club lost $9,000,000 in yearly dues- 120 units x $15,000 annual dues x 5 years = $9,000,000. Further, the Club lost $8,400,000.00 in initiation fees – 120 units x $70,000 initiation fee = $8,4000,000." DE 9 ¶ 3. Notably, Plaintiff does not explain how he and the Class Members suffered any injury as a result of Defendants' alleged actions. Rather, he states that Boca West—one of the Defendants—lost $17,000,000. It is unclear how this loss shows that the amount in controversy exceeds $5,000,000.
>
> Plaintiff also alleges that Class Members' properties have decreased over $120,000 per unit, for a total loss of $500,000,000, as a result of Defendants' mismanagement. DE 9 ¶¶ 4. Plaintiff, however, does not explain how he calculated the loss of over $120,000 per unit. Plaintiff does not allege sufficient facts for the Court to plausibly infer that the amount in controversy exceeds the jurisdictional requirement of $5,000,000.

DE 57. Thus, the Court placed Plaintiff on notice of two specific issues. First, that Plaintiff had not plausibly alleged damages in excess of $5,000,000 as CAFA requires. *Id.* at 4. Second, that Plaintiff had to present evidence such that the Court was satisfied that it had subject matter jurisdiction over this case. *Id.* at 3.

Plaintiff has had three opportunities to file a complaint in this case that properly alleges the Court has subject matter jurisdiction. Plaintiff has also had eight months to marshal evidence in support of his contention that this Court possesses subject matter jurisdiction over his case under CAFA. Upon review of Plaintiff's Second Amended Complaint and the evidence Plaintiff has placed into the court file, the Court concludes that it lacks subject matter jurisdiction for several different reasons, each of which is discussed below.

Plaintiff's Alleged Damages

Because Plaintiff is the party seeking to invoke the jurisdiction of this Court under CAFA, "no presumptive truthfulness attaches to plaintiff's allegations" and "the trial court is free to weigh the evidence and satisfy to itself as to the existence of its power to hear the case." *Mortensen v. First Fed. Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1976). In the interest of completeness, however, and because the Court previously put Plaintiff on notice of its concerns over Plaintiff's pleading of subject matter jurisdiction, the Court first examines whether "it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 20010). Plaintiff's Second Amended Complaint relies upon the following:

> Defendants' mismanaging the sale of club property led to a loss of over $17,000,000. In selling club property to Akoya Associates, LLC, Defendants failed to include/enforce a standard time of the essence provision in the sale contract, resulting in a five year building delay. Because the Akoya units were not timely built, the Club lost $9,000,000 in yearly dues - 120 units x $15,000 annual dues x 5 years = $9,000,000. Further, the Club lost $8,400,000.00 in initiation fees - 120 units x $70,000 initiation fee = $8,400,000.

DE 62 at 3. Plaintiff fails to plausibly allege damages, and the amount of Plaintiff's damages is not facially apparent, for the following reasons.

Plaintiff alleges that because Defendants were the cause of delayed construction of new units on a vacant area of land, the delayed revenue stream from those new units (to Boca West) had the effect of reducing the value of Plaintiff's property. This allegation is rife with untenable assumptions and unexplained logical inconsistencies, which have the effect of rendering Plaintiff's allegation implausible. First, Plaintiff assumes, without supporting allegations, that if Defendants had utilized a time-is-of-the-essence contractual provision in the sale of the land, Defendants would have been able to immediately cause one hundred percent of all potential units on the land to be constructed. Second, Plaintiff assumes that if Defendants had successfully

4

caused one hundred percent of all planned units to immediately be constructed, those units would have immediately reached one hundred percent occupancy. Third, Plaintiff assumes without explanation that the income stream from the newly-built properties *to Boca West* is *entirely and perfectly correlated* with the value of Plaintiff's property. Fourth, Plaintiff assumes without supporting allegations that the income stream from the newly-built units would not be offset by any associated or related costs (incurred by Boca West) whatsoever—Plaintiff appears to treat theoretical, potential *gross* income the same as theoretical, potential *net* income. Fifth, Plaintiff ignores the time value of money—income to the community in the first year of construction would not necessarily have the same impact in the present day as income to the community in the fifth year of construction. Sixth, Plaintiff's allegation of seventeen million dollars in lost revenue is presented to the Court in the absence of the context of the community's financial status such as the historical amount of the community's yearly income, yearly expenses, and cash reserves. In other words, Plaintiff does not inform the Court of the percentage impact a seventeen million dollar loss of revenue would have on community funds, nor does Plaintiff reference in any way the existing reserves or other means by which potential lost revenue could be mitigated in lieu of directly (and immediately) passing such a loss onto community property owners. Seventh, Plaintiff's simplistic mathematical computation for his damages ignores all other possible effects on revenue, expenses, and property values including regular market forces, inflation, and systemic fluctuations in the real estate market.

> Plaintiff's allegations are implausible for other reasons as well. Plaintiff alleges that:
>
> Based on discussions and consulting [sic] with multiple real estate developers, and BWCC club members, on average Class Members' properties have decreased over $120,000 per unit, some have lost 99% of their value and others cannot be sold for $1. In total, Defendants' action [sic] have resulted in a $500,000,000 decrease in the value of Class Members' properties.

*Id.* Plaintiff fails to explain how a delayed income stream of approximately seventeen million dollars (see above) resulted in the alleged *five hundred million* dollars of lost equity. Plaintiff also alleges that while membership at Boca West was previously optional, it is now mandatory, and that previously a membership cost $20,000, whereas now it is $70,000. *Id.* at 6-7.[1] As a result of this change and the delayed revenue from new units, Plaintiff alleges that "based on discussions with a local real estate agent, real estate developer, and Boca West club members, Plaintiff and the class property values have decreased over $120,000 per unit." *Id.* at 10. But Plaintiff's allegation—linking the Defendants' alleged actions with the marketing of residences for sale and the value of Plaintiff's home—must be viewed in the context of the entire complaint.

Plaintiff alleges that the community of Boca West is so vast it encompasses fifty-four villages, spans 1,400 acres, and is home to over six thousand residents. *Id.* at 1-4. Some homes are alleged to exceed seven thousand square feet. *Id.* at 6. Plaintiff does not explain how the alleged loss of seventeen million dollars in gross revenue, distributed across a community of Boca West's size (even if only a portion are members of the country club), may be plausibly attributed to a membership price increase of $50,000. However, even if Defendants improperly increased membership fees for some other actionable reason, Plaintiff does not explain how a membership fee increase of $50,000 has the effect of reducing every property's value by $120,000. What is missing, then, is an allegation that establishes causation. Plaintiff does not provide an appraisal, or reference an appraisal. Instead, Plaintiff references "discussions" he has had with other people to determine the value of community property. *Id.* at 10. Plaintiff alleges only a single concrete example of a real estate property listing for a residence that was marketed for sale at a reduced amount, but the hyperlink provided to the Court in the Second Amended Complaint does not function. *Id.* Even if Plaintiff's single real estate listing is accepted as true,

---

[1] Plaintiff also alleges that future refunds of mandatory dues payments were reduced.

Plaintiff must still provide some factual allegation such that the Court may plausibly infer Plaintiff's damages or otherwise permits the Court to facially determine the amount of Plaintiff's damages.[2]

In summary, the Court cannot plausibly infer Plaintiff's damages from his Second Amended Complaint. In essence, Plaintiff has alleged in a conclusory fashion that his damages are a specific amount. In connection therewith, Plaintiff has provided a simplistic, conclusory mathematical computation, but the Court must view Plaintiff's Second Amended Complaint in its entirety. For the reasons set forth above, the Court concludes that it cannot plausibly infer or facially ascertain that Plaintiff's class damages exceed five million dollars from the Second Amended Complaint.

## Plaintiff's Evidence of Damages

Plaintiff "must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1330 (11th Cir. 2006). Here, Plaintiff has provided no evidence on the issue of damages under CAFA. Evidence is not attached to Plaintiff's Second Amended Complaint. Although Plaintiff has attached some documents to his response to Defendants' motions to dismiss, those documents contain no information relevant to the Court's damages analysis under CAFA. As a result, Plaintiff has failed to establish by a preponderance of the evidence that his claims may be litigated in this Court under CAFA.

## Plaintiff's Evidence of Citizenship

CAFA also states that a "district court shall decline to exercise jurisdiction" if more than two-thirds of the members of the proposed plaintiff class are citizens of the state in which the action is filed. 28 U.S.C. § 1332(d)(4). Plaintiff has provided no evidence of the citizenship of

---

[2] The Court rejects Plaintiff's contention that he was damaged by virtue of locker fees he was not required to pay (for a locker he did not rent) without comment.

his proposed class, and the Court weighs this lack of evidence against the fact that Plaintiff's proposed class consists of individuals who own homes in a single Florida community. This CAFA exception is known as "the local controversy exception." *See Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163-64 (11th Cir. 2006). The local controversy exception was created because "a federal court should bear in mind that the purpose [of the exception] is to identify a truly local controversy—a controversy that unique affects a particular locality to the exclusion of all others." *Id.* at 1164. Here, Plaintiff's claims revolve around one Florida residential community. This is not a case about a defective product, for example, wherein the defective product has traversed state lines and been sold in multiple jurisdictions. This is a case about whether the management at one Florida community acted improperly in the regulation of that community. Thus, Plaintiff's claims stand in stark contrast to the policy rationale that gave rise to CAFA, which "indicate[d] that Congress contemplated broad federal court jurisdiction . . . providing for federal court consideration of interstate cases of national importance under diversity jurisdiction." *Id.* The Court concludes that because of Plaintiff's failure to provide any evidence on this subject[3] and because of the scope of Plaintiff's Second Amended Complaint, the local controversy exception applies in this case and Plaintiff, in the alternative, cannot invoke the subject matter jurisdiction of this Court under CAFA due to the local controversy exception.

### IV. THE COURT'S FEDERAL QUESTION JURISDICTION

Plaintiff has brought a single claim, Count VI, which has the possibility of arising under federal law. Plaintiff's Count VI is a claim under the Racketeer Influenced and Corrupt Organizations Act. What is unclear, however, is whether Plaintiff has brought this claim under

---

[3] Plaintiff relies upon the allegation that the homeowner's directory for Boca West includes addresses for some residents at out-of-state addresses. Here, the party with the burden of proof to establish the local controversy exception is irrelevant insofar as Plaintiff has failed to establish a basis for CAFA jurisdiction as a threshold matter, there *is* no evidence of citizenship in this case, and, furthermore, Plaintiff's lack of evidence of citizenship must be weighed in light of the facially local nature of his claim which is limited to the management of a single Florida community. *See Evans*, 449 F.3d at 1162-65 (discussing the party with the burden of proof to apply the exception).

the federal RICO Act or the Florida RICO Act. In its order dismissing Plaintiff's First Amended Complaint, the Court informed Plaintiff that it was unclear whether Plaintiff's RICO claim, Count VI, was brought pursuant to federal law or Florida law. The Court declined to permit Plaintiff's Count VI to serve as a basis for federal jurisdiction for the following reasons:

> Plaintiff does not clearly state if he is alleging a RICO claim under federal or state law. "In order to establish a federal civil RICO violation under [18 U.S.C.] § 1962(c), the plaintiffs must satisfy four elements of proof: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282 (11th Cir 2006) (citations and internal quotation marks omitted). Racketeering activity is defined as "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . which is chargeable under State law and punishable by imprisonment for more than one year" or any act under several enumerated federal statutes. 18 U.S.C. § 1961(a).
>
> Florida also has a RICO statute that is similar to the federal RICO statute. The two statutes differ, however, in their definition of racketeering activity; the Florida RICO statute's definition includes predicate offenses that are not listed under federal RICO. *Compare* Fla. Stat. § 772.102, *with* 18 U.S.C. § 1961(a). Notably, federal RICO does not list common law fraud as a predicate offense, *see id.*, but Florida RICO does, *see* Fla. Stat. § 772.102(a)(22).
>
> Plaintiff does not state if he is bringing the claim under federal or Florida RICO. To support his RICO claim, Plaintiff argues that Defendants conspired to commit various misrepresentations in order to defraud Plaintiff and the Class Members of money. DE 9 ¶¶ 119–125. Defendants argue, and Plaintiff concedes, that "[c]ommon law fraud . . . is not one of the crimes enumerated in the definition of 'racketeering activity'" under federal RICO. *See* DE 21 at 21; DE 31 at 15. In response, Plaintiff argues that Florida RICO includes common law fraud as a predicate offense. *Id.*
>
> Although not clear, Plaintiff appears to bring his civil RICO claim under the Florida RICO statute, rather than the federal RICO statute. The Amended Complaint does not allege that Defendants committed violations of any of the enumerated state or federal laws necessary to bring a claim under the federal RICO statute. *See* DE 9 ¶¶ 119–25. Additionally, Plaintiff's Response to Defendants' Motion to Dismiss acknowledges the flaw in his Amended Complaint under the federal RICO statute and suggests that the claim is brought under the Florida RICO statute. Thus, because the claim is not brought under a federal statute, it does not provide a basis for federal subject-matter jurisdiction.

DE 57 at 7-9. In his Second Amended Complaint, Plaintiff again does not specify whether his claim is brought under Florida law or federal law. Plaintiff also fails to clarify in his response to

Defendants' motions to dismiss, again, whether his RICO claim is grounded in federal law or Florida law. For example, Plaintiff argues on page 19 of his response that while his claim may not succeed under federal law, his claim does succeed under the Florida RICO statute. *See* Fla. Stat. § 772.102(1). To the extent Plaintiff again brings Count VI under Florida law, the Court cannot utilize that claim to exercise subject matter jurisdiction over Plaintiff's case. To the extent Plaintiff intends to bring his RICO claim under federal law, the Court dismisses Count VI for two reasons. First, the Court dismisses the claim for all of the reasons set forth in its order at docket entry 57, quoted above. Second, the Court dismisses the claim for the reasons set forth below.

"[T]he goal of RICO is to combat organized crime, not to police routine commercial dealings." *Ray v. Spirit Airlines, Inc.*, 126 F. Supp. 3d 1332, 1340 (S.D. Fla. 2015), *aff'd*, 836 F.3d 1340 (11th Cir. 2016); *see also In re Mouttet*, 493 B.R. 640, 661 (Bankr. S.D. Fla. 2013) ("The RICO statutes are not designed as a vehicle to resolve commercial disputes."). A civil RICO claim must demonstrate the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) that caused injury to business or property." *Ray*, 126 F. Supp. 3d at 1339.

Here, the Court cannot discern a single, plausible, non-conclusory allegation in Plaintiff's Second Amended Complaint that Defendants engaged in a pattern of racketeering activity. *See S.E. Laborers Health & Welfare Fund v. Bayer Corp.*, 655 F. Supp. 2d 1270, 1277-78 (S.D. Fla. 2009) (dismissing RICO claims since "general claims" are not sufficient to allege a "pattern" of racketing activity). Plaintiff does not allege any criminal activity—Plaintiff does not allege that Defendants violated a criminal law of any jurisdiction. Plaintiff's complaint is completely silent on the issue of criminal acts, criminal law, or alleged criminal activity. Plaintiff has not even adequately pled that Defendants engaged in common-law fraud—allegations of fraud must be

pled with particularly, and Plaintiff's Second Amended Complaint does not plead with particularity the circumstances constituting fraud. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").[4]

Assuming, for the sake of argument, that Plaintiff has adequately pled that Defendants engaged in common-law fraud, this is an improper basis for a federal RICO claim. *See* 18 USC § 1961(1); *Zolfaghari v. Sheikholeslami*, 943 F.2d 451, 453 (4th Cir. 1991) "[C]ommon law fraud may well have existed. Yet, of course, when assessing whether there has been a breach of the federal RICO Act, that is not enough."). The Court expressly placed Plaintiff on notice that common law fraud is not a proper basis for a federal RICO claim in its prior order of dismissal. *Fleet Credit Corp. v. Sion*, 893 F.2d 441, 445 (1st Cir. 1990) ("[C]ommon law fraud [which does implicate the mail] do[es] not constitute 'racketeering activity' under the definition found within the RICO statute."). Nonetheless, Plaintiff continues to argue to this Court, just as Plaintiff did with Defendants' prior motions to dismiss, that the Court should consider his allegations of common-law fraud under the *Florida* RICO statute, which *does* permit common-law fraud as a predicate for a RICO claim. DE 69 at 19. Finally, Plaintiff has failed to plead that Defendants proximately caused damage to his property (the fifth necessary element for a RICO claim) for all of the reasons set forth above in the Court's analysis on damages.

In summary, Plaintiff has failed to plead a federal RICO claim.[5] Plaintiff alleges nothing more than routine commercial dealings or, at best, alleges common-law fraud. Plaintiff's RICO

---

[4] Even if Plaintiff were attempting to plead a federal RICO claim premised upon an actionable type of fraud, such as mail or wire fraud, his RICO claim would still have to be pled with specificity as to the "precise statements, documents, or misrepresentations made, the time place and person responsible for the statements, the content and manner in which the statements misled Plaintiff, and what the defendants gained by the alleged fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997). Each of these requirements is missing from Plaintiff's Second Amended Complaint.

[5] In the interest of brevity, the Court has not set forth in this order every reason Plaintiff's federal RICO claim is deficient as a matter of law. On this issue, the Court adopts and incorporates the argument and reasoning in Defendants' pending motions to dismiss, together with the text of the community by-laws, to substantiate the Court's dismissal of Plaintiff's Count VI.

claim is not premised upon criminal activity. Plaintiff does not allege racketeering activity. Plaintiff's Count VI, to the extent it is premised upon the federal RICO statute, is dismissed, and the Court declines to exercise its discretion to retain supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3); *Millette v. DEK Techs., Inc.*, No. 08-60639, 2008 WL 5054741 (S.D. Fla. Nov. 25, 2008). The Court's dismissal is with prejudice for the following reasons: Plaintiff has had three opportunities to file a complaint in this case, the amended pleadings deadline expired on October 16, 2017, the Court expressly placed Plaintiff on notice of its concerns over its subject matter jurisdiction on October 16, 2017, and Plaintiff has failed to correct the pleading deficiencies identified by this Court in its prior order of dismissal.

For all of the foregoing reasons, there is no basis for the Court to exercise subject matter jurisdiction over this case, and it is **ORDERED AND ADJUDGED** that Plaintiff's remaining state law claims are dismissed without prejudice.[6] Finally, the Court exercises its discretion[7] to **DENY** all pending motions for sanctions. The Clerk of the Court is directed to **CLOSE THIS CASE** and **DENY** all other pending motions **AS MOOT**.

**DONE AND ORDERED** in Chambers, Fort Pierce, Florida, this 12th day of January, 2018.

Copies furnished to:  
Counsel of record

ROBIN L. ROSENBERG  
UNITED STATES DISTRICT JUDGE

---

[6] Because the Court lacks subject matter jurisdiction over this matter, the Court does not address any of Defendants' arguments pertaining to Plaintiff's state law claims.

[7] District courts are afforded "broad discretion" with respect to requests for sanctions under Rule 11 of the Federal Rules of Civil Procedure. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 407 (1990).